[Cite as *Pitcher v. Waldman*, 2016-Ohio-5491.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| KENNETH B. PITCHER, | : | APPEAL NO. C-160245 |
| and | : | TRIAL NO. A-1207858 |
| MICHAEL ENDERS, | : | *O P I N I O N.* |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| LAWRENCE WALDMAN, | : | |
| Defendant-Appellant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 24, 2016

*Bingham Greenebaum Dolle, L.L.P.*, and *V. Brandon McGrath*, for Plaintiffs-Appellees,

*Denlinger Rosenthal & Greenberg Co., LPA,* and *Gary L. Greenberg*, for Defendant-Appellant.

**MOCK, Judge.**

{¶1}   Defendant-appellant Lawrence Waldman appeals the trial court's decision overruling his motion for sanctions for alleged frivolous conduct by plaintiffs-appellees Kenneth B. Pitcher and Michael Enders.  We find no merit in Waldman's sole assignment of error, and we affirm the trial court's judgment.

{¶2}   The parties are the former owners of Waldman, Pitcher and Company ("WPC"), an accounting firm.  In 2009, Pitcher and Ender filed a lawsuit seeking a judicial dissolution of the firm.  In October 2009, the parties entered into a settlement agreement in which Pitcher and Enders relinquished their ownership in WPC.  The settlement agreement also contained a nondisparagement provision, which stated that "Pitcher, Enders, Waldman and the Company agree * * * not to make or publish any negative or disparaging statements or comments about one another[.]"

{¶3}   In 2010, Waldman and his company, Waldman & Co. CPAs, PSC, filed suit against Pitcher and Enders alleging breaches of the 2009 settlement agreement and other tort claims.  At that time, the parties agreed to a stipulated protective order.  It designated certain information disclosed during the suit as confidential and allowed disclosure of confidential information to a court or administrative agency under certain conditions.  It stated:

> If another court or administrative agency subpoenas or orders production of any discovery materials that a Party has obtained under the terms of this Protective Order, such party shall promptly notify the party who produced the materials of the pendency of such subpoena or order, and shall allow the party who produced the materials a

reasonable period of time to oppose or quash the subpoena or order before providing the materials to the person or entity seeking them. No production or other disclosure of such information pursuant to the subpoena or other process shall occur before the last date on which production may be made as specified in or required by the subpoena or other process.

{¶4} In 2011, Pitcher and Enders filed a lawsuit in federal court against Waldman and his company in which they alleged that Waldman had filed fraudulent tax documents. They claim that they discovered during that case that Waldman had disclosed confidential information to the Internal Revenue Service ("IRS") in violation of the 2009 settlement agreement and the 2010 protective order.

{¶5} In the summer of 2011, Waldman had sent voluminous amounts of information to Kent Pillow, an IRS auditor, about alleged professional misconduct by Pitcher and Enders. He had also communicated with Kerry Johnson, a Treasury Department investigator. Waldman's complaints triggered an audit of Pitcher's and Enders's tax returns.

{¶6} On January 31, 2012, the parties settled the 2010 lawsuit and entered into another settlement agreement. It provided that with two exceptions, which included the federal case, "Pitcher and Enders agree to fully and finally release [Waldman's company] and Waldman from any and all legal and equitable claims which Pitcher and Ender know to exist as of the date of this Agreement." It further stated that with the same exceptions, "Pitcher and Enders hereby forever release and discharge Waldman [and his company] from any and all claims, demands, actions and causes of action, damages, costs or expenses, including attorney fees, that Pitcher and Ender know to exist as of the date of this Agreement."

{¶7} In October 2012, Pitcher and Enders filed a six-count complaint against Waldman alleging that his communications with Pillow and Johnson violated the 2009 settlement agreement and the 2010 protective order. On May 22, 2014, they voluntarily dismissed their complaint without prejudice under Civ.R. 41(A).

{¶8} Waldman filed a motion for sanctions under R.C. 2323.51 on June 20, 2104. On November 12, 2014, Pitcher and Enders filed a notice indicating that there had been no activity on the case since July 2014, at which time the parties had filed memoranda on the merits of the motion for sanctions. On November 19, 2014, Waldman filed a notice informing the trial court that the "case is ripe for a decision on his Motion for Sanctions." On August 24, 2015, the parties jointly filed a motion asking the trial court to issue a decision on the motion for sanctions. Subsequently, the trial court denied Waldman's motion for sanctions. This appeal followed.

{¶9} In his sole assignment of error, Waldman contends that the trial court erred by arbitrarily denying his motion for sanctions. He argues that the record shows that Pitcher and Enders filed the complaint against him for claims that they knew they had previously released, and that its sole purpose was to harass him. This assignment of error is not well taken.

{¶10} Waldman first argues that the trial court erred by failing to hold a hearing on his motion. But, this court has stated that "R.C. 2323.51 does not mandate that a hearing be conducted to determine whether a particular action involves frivolous conduct, but does require that if attorney's fees are to be ultimately awarded, then a hearing must be held in accordance with * * * R.C. 2323.51(B)(2)." *Polk v. Spirit Homecare, Inc.*, 1st Dist. Hamilton No. C-120088, 2012-Ohio-4948, ¶ 6, quoting *Mays v. Rebar*, 1st Dist. Hamilton No. C-910585, 1992 Ohio App LEXIS 5154, *7 (Oct. 7, 1992). If the motion has merit, the statute requires the trial court to

set a hearing. If the motion lacks merit, then no hearing date need be set for the trial court to deny the motion. *Mays* at *6.

{¶11} This court has also held that a trial court may not arbitrarily deny a request for sanctions. An arbitrary denial occurs when (1) the record clearly evidences frivolous conduct and (2) the trial court nonetheless denies a motion for attorney fees without holding a hearing. *Polk* at ¶ 6. In this case, the trial court did not arbitrarily deny Waldman's motion. Both Waldman's motion and Pitcher and Enders's memorandum opposing the motion contained substantial amounts of documentary evidence, and the record in this case does not clearly evidence frivolous conduct. Because the motion has no merit, the trial court did not err in failing to hold a hearing.

{¶12} Additionally, Waldman did not ask for a hearing on the motion. Loc.R. 14(C) of the Hamilton County Rules of Practice of the Court of Common Pleas provides that no motions will be set for hearing unless a party requests a hearing in writing or the court directs the assignment commissioner to set a motion for oral argument. If no request for oral argument is made within ten days of the filing of the motion, "the motion shall be considered by the assigned judge for decision."

{¶13} Further, when a decision on the motion was not forthcoming, the parties asked the court to decide the motion, and Waldman still did not ask for a hearing. Under the circumstances, he forfeited any right to a hearing. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21; *Jeffers v. Bumgardner*, 7th Dist. Belmont No. 15 BE 0024, 2016-Ohio-4655, ¶ 22. "[A]n appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's

attention at a time when such error could have been avoided or corrected by the trial court." *Jeffers* at ¶ 22, quoting *Rogers* at ¶ 21.

{¶14} Next, Waldman contends that the trial court erred in overruling his motion because he presented clear evidence that Pitcher and Enders had engaged in frivolous conduct. A motion for sanctions under R.C. 2323.51 requires a court to determine whether the challenged conduct constitutes frivolous conduct as defined in the statute, and, if so, whether any party has been adversely affected by the frivolous conduct. *Riston v. Butler*, 149 Ohio App.3d 390, 2002-Ohio-2308, 777 N.E.2d 857, ¶ 21 (1st Dist.). The statute defines frivolous conduct as conduct by a party to a civil action: (1) that serves merely to harass or maliciously injure another party to the action or is used for another improper purpose; (2) that is not warranted under existing law and cannot be supported by a good faith argument for a modification or establishment of new law; (3) that consists of allegations or other factual contentions that have no evidentiary support; or (4) that consists of denials or factual contentions that are not warranted by the evidence. *Radvansky v. W. & S. Fin. Group*, 1st Dist. Hamilton No. C-070470, 2008-Ohio-4472, ¶ 20.

{¶15} The statute was designed to chill egregious, overzealous, and frivolous action. *Evans v. Quest Diagnostics, Inc.*, 1st Dist. Hamilton No. C-140479, 2015-Ohio-3320, ¶ 18; *Riston* at ¶ 35. The test to determine whether a claim is frivolous is whether no reasonable lawyer would have brought the action in light of existing law. *Evans* at ¶ 18; *Riston* at ¶ 36.

{¶16} Our standard of review depends on whether there are questions of law and fact, or whether there are mixed questions of law and fact. *Radvansky* at ¶ 20. With respect to purely legal questions, we employ a de novo standard of review. *Id.*; *Riston* at ¶ 26. On factual issues, we give deference to the trial court's factual

determinations, which we should not disturb if they are supported by competent, credible evidence. *Radvansky* at ¶ 20; *Riston* at ¶ 25-26. Finally, we review a trial court's decision to award any fees on the basis of frivolous conduct for an abuse of discretion. *Radvansky* at ¶ 20; *Riston* at ¶ 27.

{¶17} Waldman contends that Pitcher and Enders's complaint was based entirely on his communications with Pillow and Johnson. He cites to deposition testimony in which Pitcher and Enders acknowledged that they knew in the summer and fall of 2011 that Waldman had been communicating with Pillow and Johnson, and that he had filed a complaint against them with the IRS. Pitcher and Enders had even met with Johnson in the summer of 2011, and they admitted that, at that time, Johnson had binders of information that Waldman had supplied to them. They also acknowledged that by the fall of 2011, Pillow had discussed with them a possible audit. Waldman also contends that Pitcher and Enders's attorney had argued about Waldman's alleged violations of the 2009 settlement agreement and the 2010 protective order and Waldman's alleged "pattern" of "trying to defame" them at a hearing a few weeks before the execution of the settlement agreement.

{¶18} Yet, Waldman contends, despite knowing about these communications, Pitcher and Enders released all claims that they knew to exist in the January 31, 2012 settlement agreement. Because Pitcher and Enders raised claims in this case that they had released in that settlement agreement, he argues, their claims were clearly frivolous and were filed merely to harass him.

{¶19} We note that Pitcher and Enders rely on a statement this court made involving a previous version of R.C. 2323.51. We stated that "[a] party is not frivolous merely because a claim is not well grounded." *Riston*, 149 Ohio App.3d 390, 2002-Ohio-2308, 777 N.E.2d 857, at ¶ 35. That statement is no longer good law

because the statute has since been amended to include the two prongs that relate to the absence of evidentiary support for a claim or defense. *Williams Creek Homeowners Assn. v. Zweifel*, 10th Dist. Franklin No. 07AP-689, 2008-Ohio-2434, ¶ 83.

{¶20} While the record shows that Pitcher and Enders knew that Waldman was communicating with the IRS before they signed the January 31, 2012 settlement agreement, it does not show that they were specifically aware of the disclosure of information deemed confidential under the 2009 settlement agreement and the 2010 protective order. They claimed that they did not know about the disclosure of the confidential information until July 2012, which was six months after the execution of the settlement agreement, and therefore, they believed that they had not released those claims in that agreement.

{¶21} Waldman has failed to show that there was no reasonable basis for Pitcher and Enders's interpretation of the agreement. They may not have prevailed at trial, but that does not make their arguments frivolous. *See Schiff v. Dickson*, 8th Dist. Cuyahoga No. 99719, 2013-Ohio-5253, ¶ 14. "R.C. 2323.51 does not purport to punish a party for failing on a claim[,]" or for making a misjudgment or tactical error. *State ex rel. Chrisman v. Clearcreek Twp.*, 12th Dist. Warren No. CA2013-03-025, 2014-Ohio-252, ¶ 10; *Bennett v. Martin*, 10th Dist. Franklin No. 13AP-99, 2013-Ohio-5445, ¶ 27, quoting *Indep. Taxicab Assn. of Columbus v. Abate*, 10th Dist. Franklin No. 08AP-44, 2008-Ohio-4070, ¶ 22; *Riston* at ¶ 35. Whether conduct evidences an intent to harass or maliciously injure generally is a factual determination best suited for the trial court. Therefore, we must give deference to the lower court's judgment regarding those issues. *Schiff* at ¶ 10.

{¶22} There was a legal basis for the suit, and we cannot hold that no reasonable lawyer would have brought the action. Consequently, the trial court did not err in denying Waldman's motion for sanctions. We overrule Waldman's assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**HENDON, P.J.,** and **STAUTBERG, J.,** concur.

Please note:

The court has recorded its own entry this date.